Marjorie BROOKS

v.

David E. SMITH, Commissioner of the Department of Health and Welfare.

Supreme Judicial Court of Maine.

April 30, 1976.

Pine Tree Legal Assistance, Inc. by Susan Calkins, Portland, for plaintiff.

Chalmers Hardenbergh, Staff Atty., Dept. of Health and Welfare, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

■ The plaintiff, Mrs. Brooks, is a recipient of Aid to Families With Dependent Children and it is agreed that both she and her daughter, age 13, are within the class of persons eligible for medical assistance under the Medicaid program and that the child is thus eligible for *some* dental treatment. The plaintiff requested that the Department of Health and Welfare (now the Department of Human Services) approve orthodontia for the child. The former Commissioner ruled that the dental services available under this program do not include orthodontia. The plaintiff sought a review of his decision under M.R.C.P., Rule 80B.[1] A Justice in the Superior Court held that the child is in need of orthodontia and that the Commissioner's interpretation of the controlling statutes and regulations was erroneous. He ordered the Commissioner to find the child eligible for such treatment.

The present Commissioner appealed from this judgment. We deny the appeal.

The Medicaid program came into existence in 1965 as an amendment to the Social Security Act to provide federal financial assistance to states for medical assistance to those "whose income and resources are insufficient to meet the costs of necessary medical services". 42 U.S.C. §§ 1396–1396d. It is administered in Maine by the Department of Human Services and is paid for with both state and federal dollars.

The Federal statutes (to be discussed in more detail later) require the participating states to provide, as a minimum, certain described medical services to their eligible citizens, and regulations promulgated by

the Department of Health, Education and Welfare implement these mandates by a more detailed schedule of medical (including dental) services which the states are obligated to furnish. The Medical Assistance Manual (MAM) and Code of Federal Regulations (C.F.R.).

Upon entering into participation in this federal-state program, this State promulgated regulations to guide its own Medicaid program. They were published as the Maine Medical Assistance Manual (MMAM). In the respects which concern us, at least, they duplicate the federal regulations with some minor variations which we will discuss later.

No statutory provision or federal or state regulation either specifically approves or specifically forbids orthodontic treatment as such.

Now, against this brief statutory-regulatory background, we will examine the procedure followed in this case.

The plaintiff had requested the Commissioner to pay for future orthodontic treatment for the child which had been commenced but was due to be discontinued because of the mother's inability to pay for it. She supported her request by letters from dentists describing the child's oral deformity and need of dental treatment, together with her x-rays. This material was reviewed by the Director of the Bureau of Medical Care and by the Department's Dental Consultant. The Medical Claims Consultant of the Division of Medical Assistance then wrote the plaintiff's legal advisor:

"Your request for approval for orthodontic work for [the child] has been carefully reviewed by Dr. Gilbert Mar-

1. Although the child may well be considered the real party in interest and is not formally named in the litigation which led to this appeal, no question of the mother's standing to prosecute this appeal has been raised. We are satisfied that although the action might well have been brought by the mother in a representative capacity, her own interest as one responsible to furnish the child necessary medical care gives her sufficient standing. *See Ottman v. Fisher*, Me., 319 A.2d 56 (1974). *But see Donahoe v. Richards*, 38 Me. 376 (1854).

cotte, Director of the Bureau of Medical Care and Dr. Alonzo Garcelon, Dental Consultant to the Department of Health & Welfare.

The need of orthontia for [the child] has been substantiated. However, as the Medicaid Dental Program does not cover orthodontia, it is necessary to not approve this case.

We hope that future funding will enable us to cover orthodontics, as there is a great need here. However, it was necessary to establish priorities of care with the limited money we were allotted and restoration and replacement were established at the top of the list."

Following the disapproval of her request by the Medical Claims Consultant, the plaintiff sought a "fair hearing". Such a hearing was held before the Department Hearing Officer. Both the plaintiff and the Department were represented by persons who were not attorneys. The plaintiff testified and introduced letters from her medical experts, the letter from the Medical Claims Consultant, a model of the child's teeth and her x-rays. It was not contradicted that the child has a severe dento-facial deformity with impaction of second bicuspid teeth and a protrusion which makes it impossible for her to eat some foods and prevents complete closing of the lips due to lack of space in the dental arches. This deformity is more than a cosmetic problem and is severe enough to constitute a hazard to the child's future dental health. Earlier extractions had left spaces which, if unclosed by orthodontia, increased her chances of temporo-mandibular joint problems and periodontal disease. An examination of the x-rays can leave no doubt as to the severity of her present condition. It was the opinion of her dentist that discontinuation of the orthodontic procedure could be very detrimental to her oral health.

The record of this hearing formed the factual basis for the Commissioner's ruling. He held that:

"At issue was whether Medical Services Specialist erred in denying approval of payment for dental care. *Applicant is in need of orthodontia.* She submitted testimony, together with exhibits, to indicate the need. Refusal was based on the fact that this type of care is not covered by the rules and regulations. Applicant submitted copies of Federal regulations. The Department submitted copies of State regulations. Careful review of the pertinent rules fail to reveal error." (Emphasis added.)

The Justice in the Superior Court reviewed the matter on the record and granted the motion for judgment for the plaintiff. He found that:

"1. The Finding of Fact made by the defendant in his administrative decision dated July 29, 1974, is correct. The defendant found that the plaintiff's child is in need of orthodontia. The factual finding of the defendant was made following an administrative hearing at which the plaintiff produced testimony and documents to substantiate the need [for] the orthodontia. The factual finding of the defendant was based upon substantial and credible evidence given at the administrative hearing.

2. The Conclusion of Law reached by the defendant in the hearing decision dated July 29, 1974, that the plaintiff's child was not entitled to orthodontia treatment because such treatment is not covered by rules and regulations is erroneous. The plaintiff's child is entitled to orthodontic treatment pursuant to 42 U.S.C. §§ 1396a(a)(13)(B) and 1396d(a)(4)(B); 45 C.F.R. § 249.10(a)(3)(iv); and the Maine Medical Assistance Manual."

*The Child's Need For Orthodontia*

The Commissioner, after reviewing the "fair hearing" record, found that

"Applicant is in need of orthodontia."

Now, on appeal, defendant urges us that this statement should not be construed as a finding that the child's dental condition is of such a serious nature as to meet federal standards for entitlement to treatment (*even if* orthodontia *is* an available treatment—an issue to be discussed later).

At this point it will be sufficient to say that the federal regulations commit the Medicaid program to "restoration of teeth and maintenance of dental health" (45 C. F.R. § 249.10(a) (3) (iv)), to "correct or ameliorate . . . abnormalities" (MAM 5–70–20(A)(3)) and to treat dental problems which, if untreated, "may become acute dental problems or may cause irreversible damage to the teeth or supporting structures." MAM, 5–70–20(G) (1).

The Commissioner was aware that both Dr. Marcotte and Dr. Garcelon had approved of the application for the child's orthodontia and that the Medical Claims Consultant (whom he apparently referred to as the "Medical Services Specialist") had found that her need had been substantiated. He had before him the record of the fair hearing with the reports from the child's dental experts and the undisputed evidence of her serious dental defects and he had read there her attorney's insistence that the question of her medical eligibility was an issue which should be fully presented at that hearing. No evidence disputing this need was presented.

It is inconceivable that the Commissioner intended his finding of her "need of orthodontia" to mean anything less than that her problem threatens her dental health. If he had not meant that she was medically eligible, there would have been no need for him to have gone further with the other issue.

*Does the Scheme of Federal Statutes, Federal Regulations and State Regulations Require the Commissioner to Provide Orthodontia to the Plaintiff's Child?*

The letter of denial from the Medical Claims Consultant does not specify the precise authority for the Department's refusal. The Consultant explained that "as the Medicaid Dental Program does not cover orthodontia it is necessary to not approve this case." We take it that the Department's position was not that the federal statutes and regulations *forbid* the State's furnishing orthodontic treatment but, instead, that they do not *require* it and that the State Department was free to adopt regulations excluding such treatment in order to utilize more advantageously the limited funds available to it.

We understand the Commissioner's decision to have so interpreted the Consultant's denial, that he adopted this position and that he interprets the "rules and regulations" of his Department as excluding this type of treatment.

That this is the defendant's position is made quite clear by the defendant's answer to plaintiff's 80B complaint which answer asserts in part:

"[T]he treatment was denied on only one ground: due to the limited funds made available to the Defendant, it has employed utilization regulations which exclude orthodontia . . . ."

The record discloses no specific exclusion in the State's regulations. Can the Commissioner so interpret them? We think not.

Our review of the applicable statutes and regulations leads us to agree with the Justice who ruled in favor of the plaintiff.

42 U.S.C. § 1396 states the purpose of the Act is "to enable each State, as far as practicable under the conditions in each State, to furnish . . . medical assistance on behalf of families with dependent children . . . whose income and resources are insufficient to meet the costs of necessary medical services."

Maine, as a participating state, is required to provide, as a minimum,

" . . . at least the care and services listed in clauses (1) through (5) of section 1396d(a) . . . ." 42 U.S.C. § 1396a(a)(13)(B).

Clause 4(B) of 1396d(a) designates as one of such required services

"such early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby, as may be provided in regulations of the Secretary . . . ."

Clause 10 includes "dental services".

The United States Department of Health, Education and Welfare has promulgated regulations to implement the medical assistance program in participating states. 45 C.F.R. §§ 246–249. Of particular interest to us is 45 C.F.R. § 249.10(a)(3)(iv) which demands that a state plan for medical assistance must provide:

" . . . at least such dental care as is necessary for relief of pain and infection and for restoration of teeth and *maintenance of dental health* . . . *whether or not otherwise included under the State plan,* subject, however, to such utilization controls as may be imposed by the State agency." (Emphasis added.)

■ The State's authority to impose "utilization control" permits it to determine what use is to be made of private professional services or other agencies in achieving this end. We do not understand it as a grant of authority by the Secretary to make available *less* treatment than that mandated by the federal regulation—that is, such "as is necessary for restoration of teeth and maintenance of dental health".

The United States Department of Health, Education and Welfare has issued a Medical Assistance Manual (also known as Program Regulation Guide) to assist the participating states in comprehending the purposes of the program and the nature and extent of the medical services they are obligated to furnish. This federal guide (MAM, 5–70–20(G)(1)) demands that, as to dental services,

"even if not otherwise included in the State plan, . . . dental care *to maintain dental health* must be provided.

As a minimum, the dental services that must be provided include emergency services, preventive services and therapeutic services for dental disease which, if left untreated, may become acute dental problems or may cause irreversible damage to the teeth or supporting structures. Other therapeutic services for dental disease should be provided as rapidly as the availability of resources permits." (Emphasis added.)

This section goes on to mandate that dental services "include" emergency, preventive and therapeutic services and names certain approved dental procedures under each of these three categories.

■ Our participation in this program obligates the State of Maine to adopt operating procedures which provide at least the services assured by Federal statutes and regulations. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Stanton v. Bond,* 504 F.2d 1246 (7th Cir. 1974), *cert. denied,* 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975).

The State of Maine promulgated its own regulations—the Maine Medical Assistance Manual—which we can safely assume were intended to meet, at least, the minimum Federal requirements. Apparently, it is these regulations which the Commissioner concluded barred the authorization of orthodontia.

The Maine Medical Assistance Manual declared it to be State policy that

"[t]he efficient expenditure of limited public funds requires that participating

dentists limit their services to that which is reasonable and necessary; and ·not what is either cosmetic or desirable."

It then acknowledged its obligation to furnish emergency, preventive and routine therapeutic dental services, giving examples not significantly different from those of the Medical Assistance Manual. It makes no specific provision for orthodontia and no specific prohibition as to its use.

It is unquestioned that the program must comply with the terms of federal AFDC legislation. Our task is to determine whether federal statutes and regulations should properly be construed to *require* the State to furnish orthodontic service in this case as the Justice ruled they do.

█ In construing the language of the federal statutes and supplementary rules and regulations, we recognize first that the statute is in the nature of remedial legislation and must be liberally construed in furtherance of the beneficient purposes for which it was enacted. *Peoples Savings Bank v. Chesley,* 138 Me. 353, 26 A.2d 632 (1942); *Haberman v. Finch,* 418 F.2d 664 (2d Cir. 1969); *Conklin v. Celebreeze,* 319 F.2d 569 (7th Cir. 1963).

█ We respect also the principle of construction which, although not conclusive, accords due consideration to the interpretations of a statute by the department entrusted with its administration in as far as they are not inconsistent with the requirements of the statute. *Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *In re O'Donnell's Express,* Me., 260 A.2d 539 (1970); *Mottram v. State,* Me., 232 A.2d 809 (1967). Here, however, the Secretary of Health, Education and Welfare, the officer charged with the administration of the Medicaid program, has interpreted the statute in the Code of Federal Regulations and the Medical Assistance Manual without specifically answering the question presented here. We can balance only administrative silence regarding orthodontia against the stated broad purpose of avoiding irreversible oral damage. While 45 C.F.R. § 249.10(a)(3)(iv) does not mention orthodontia it leaves no doubt that the Secretary intends that an eligible child shall receive the treatment *necessary* for the maintenance of her dental health—

" . . . at least such dental care as is necessary for . . . restoration of teeth and maintenance of dental health will be available . . . ."

█ The Medical Assistance Manual was issued to clarify for the states the Secretary's regulations. Its language fortifies our impression that the Secretary intended that the states must furnish the services necessary for preservation of the child's teeth. The purpose is that "dental health" be maintained. "As a minimum" emergency, preventive and therapeutic dental services "must be provided . . . for dental disease which, if left untreated . . . may cause irreversible damage to the teeth or supporting structures."

The Medical Assistance Manual states that therapeutic services "include" several procedures such as pulp therapy, scaling and curettage, etc. Although orthodontia would appear to be a therapeutic service it is not one of the procedures named. Does the absence of any specific provision for orthodontia as a part of therapeutic treatment indicate an intention not to require orthodontia even though it may be "necessary" to dental health? We think not. We do not believe that the recitation of five types of therapeutic services was intended to exclude all other types. The fact that the Medical Assistance Manual uses the word "includes" instead of "consists of" to introduce the list is a strong indication of this. Equally convincing is the absence also of any express provision for extraction of teeth, a procedure so clearly essential to treatment of certain situations that it is unthinkable that it should be in-

tended that *its* availability should not be required.

Are there available alternative treatments by which this particular child's dental health may be maintained? The record does not reveal any except, by inference, the removal of the child's teeth and the substitution of a removable prosthesis. We cannot believe that removal is an acceptable alternative to a treatment which would enable the child to keep her teeth, especially in view of the federal statute's insistence that a state's services be "provided in a manner consistent with . . . the best interests of the recipients." 42 U.S.C. § 1396a(a)(19).

Mrs. Brooks was entitled to have the validity of her request judged from the record. The record shows that the Department denial was on the basis that orthodontia was not covered by the regulations. The Department's representative would not concede at hearing that orthodontia was necessary but did nothing to dispute Mrs. Brooks' claim as to the child's need. Mrs. Brooks' paralegal representative persisted in pressing the issue and succeeded in presenting substantial evidence supporting her claim that immediate orthodontia for this child is not merely "cosmetic or desirable" but is necessary to her dental health.

It does not appear to us that the former Commissioner who reviewed this record and based his findings upon it intended his finding that "Applicant is in need of orthodontia" to be anything less than an agreement that orthodontia is required if this child's dental health is to be maintained

and irreversible damage to her teeth and supporting structures is to be avoided.

We respect the desire of the Commissioner to make use of the Department's limited funds in a manner which will accomplish the greatest benefit for the many people eligible for Medicaid Assistance. We recognize that priorities may have to be established to accomplish this purpose. Nevertheless, just as Mrs. Brooks was entitled to have the merits of the child's need reviewed on facts produced at the fair hearing, so is she entitled to have the Commissioner's refusal tested against its stated basis.

With this interpretation of the Commissioner's findings as to need, we are unable to find anything in the State's "rules and regulations" which would bar the Department from providing orthodontic services in this case.[2] Furthermore, expressed federal policy would appear to prevent the Commissioner from interpreting the State's "rules and regulations" in such a way as to deny a reasonable treatment without which a child's dental health could not be maintained and irreversible damage to the teeth and supporting structures could not be avoided.

The Justice in the Superior Court held that they could not be so interpreted. He was not in error.

The entry must be:

Appeal denied.

All Justices concurring.

DELAHANTY, J., did not sit.

---

2. We note that the Maine Medical Assistance Manual emphasizes that Congress intended "to make services available so that young people can receive medical care before health problems become chronic and irreversible damage occurs." M.M.A.M., ch. V, § 1, p. 1.