BARBARA PERSICO *v.* EDWARD MAHER,
COMMISSIONER OF SOCIAL SERVICES
(10067)

SPEZIALE, C. J., PARSKEY, SHEA, BIELUCH and COVELLO, Js.

Argued April 6—decision released September 13, 1983

*Michael A. Arcari,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Miriam Berkman,* with whom were *Stephen Wizner* and, on the brief, *P. J. Pittman, John L. Pottenger, Jr.,* and *Peter Schuck,* for the appellee (plaintiff).

BIELUCH, J. The basic issue before us is the legality of the defendant's denial of orthodontic service to the plaintiff's thirteen year old son, Donald Persico, as part of his Medicaid benefits, title XIX of the Social Security Act, administered by the defendant, the commissioner of the department of social services, now the department of income maintenance.

Donald Persico was a resident of the Curtis Home, a facility for emotionally disturbed children, as a non-committed child. During his stay at the youth facility, orthodontic correction to his teeth was professionally determined to be "a crucial component of [Donald's] overall treatment plan" to relieve his physical and psychological suffering. Because the plaintiff was

receiving aid to families with dependent children, the home director sought to obtain $550 for such dental repair work from the defendant under the state's Medicaid program utilizing joint federal and state funds. Authorization for the requested orthodontia was denied by the defendant's dental consultant on December 30, 1976. The plaintiff's request for the corrective dental treatment was medically supported as necessary by the dental findings of an orthodontic specialist, psychological reports and the objective findings and consistent recommended action of the director of the children's program at the Curtis Home. The defendant's dental consultant's denial, on the other hand, was unsupported by any findings of fact, dental, medical, psychological or otherwise, and consisted solely of the apologetic statement: "I am sorry to inform you that orthodontia services are excluded from the Department of Social Services dental program."

On January 28, 1977, the plaintiff requested a fair hearing under General Statutes § 17-2a "to determine whether [the corrective] care for Donald's dental problems are covered by either the dental program or another program of the Department of Social Services." The fair hearing was held on February 24, 1977. Testimony in support of the plaintiff's position was offered by Judith P. Stone, a protective services worker of the department of children and youth services, and Mary Spurr, a registered nurse and child case worker at the Curtis Home. The hearing officer received into evidence copies of the request for approval of payment submitted by the home's children's program director, the dental consultant's denial of the director's request for the youth's orthodontic treatment, the orthodontist's detailed assessment of his findings and Donald

Persico's need for treatment, a picture of Donald, and a psychological and social history of him prepared by the department of children and youth services.

Except for the written denial of the requested payment by the defendant's dental consultant, all of the evidence presented at the fair hearing supported the plaintiff's appeal. Spurr described the misalignment of the boy's teeth, one upper front tooth being on top of another with a large space between them as well as to one side. She testified that when one tooth had become loose, the gums were irritated and sore, causing bleeding in the mouth. When the boy talked or smiled, he would quite frequently keep a hand over his mouth, appearing to her to be covering his imperfect teeth. In outlining Donald Persico's psychological history, Spurr emphasized that he was very withdrawn for a long period of time before he became friendly with other residents. In conclusion, she testified that in her professional opinion his dental problems made him very self-conscious in his interaction and conversations with people.

Stone testified that she knew Donald Persico since 1975 and that from the beginning of her service with him he was an extremely disturbed child. A contributing factor was his dental problems as evidenced by his tendency to put his hand over his mouth and to speak very quietly. The report of the orthodontist, Herbert R. Edelstein, dated November 16, 1976, initially submitted to the defendant's dental consultant, was the only professional medical or dental evidence presented to the hearing officer. In Edelstein's opinion, "Donald Persico presents a class I malocclusion, with a severe maxillary overjet. His maxillary right lateral incisor tooth is ectopiccally erupted and is in a position lingual to his central incisor tooth. There is a large diastama [sic] between his maxillary central incisor

teeth." The written denial of the claim by the defendant's dental consultant, Harry D. Kiernan, simply expressed the exclusion of orthodontic services from the department's dental program. The defendant offered no medical or dental opinion, or other oral testimony or documentary evidence supporting his denial of the orthodontic services. The fair hearing record is devoid of any expert or professional evidence that orthodontic services were not medically necessary for the treatment of Donald Persico's dental problems and the improvement of his physical or psychological health by the correction of his malocclusion, as was presented by the plaintiff's evidence at the hearing.

Thereafter, the hearing officer submitted a transcript of the proceedings with the exhibits to a dental review team (hereinafter DRT). On March 22, 1977, the DRT replied as follows: "At your request the undersigned team has reviewed the transcript of Fair Hearing notes of February 24, 1977, and the summary of Fair Hearings. *There is no medical packet provided by the district.* On the basis of the above and because the transcript provides no medical evidence that denial of orthodontic treatment would be detrimental to the health of the patient, we concur with the decision made by the Dental Consultant to deny the request for orthodontic treatment. Also directive dated October 1, 1973 excludes orthodontic treatment from reimbursable dental services." (Emphasis added.)

On June 13, 1977, the fair hearing officer rendered his decision. An analysis of the memorandum of decision is pertinent here. Part A of the decision reviewed the testimony of the department of children and youth services social worker to the effect that the thirteen year old child was emotionally disturbed and has been placed in the children's program of the Curtis Home since September, 1974. It mentions that the director

of the program has sought for more than a year to obtain orthodontic treatment for the boy as part of their total treatment program, but the request was denied by the defendant's dental consultant as not being covered under the title XIX assistance program. Part B identified, without discussion or review, the documentary evidence received at the hearing. At this point, the hearing officer wrote as follows: "In conclusion the appellant's attorney stated that when the dental determination evaluation was completed she wished to be contacted. The attorney was subsequently contacted by two telephone calls and a letter dated 5/13/77 in which the possibility of resuming the Fair Hearing was discussed. However, since the requesting orthodontist was not available for a resumption, this request to reopen the hearing with the subsequent Dental Review Team was not allowed."

Part C, entitled "ADDITIONAL SUBMISSION," states that *"[s]ubsequent to the hearing,"* the hearing transcript and evidence "were submitted to a *different* Dental Review Team," and recited their report. (Emphasis added.)

Part D identified General Statutes § 17-134 as the relevant statute providing the legal basis for the administration of the title XIX program.[1] In part E of the decision the hearing officer established that the defendant's pertinent policy was to be found in: "1. Instructions to Participating Dentists dated 10/1/73 from the Commissioner of the Department of Social Services. 2. Manual Volume 3, Chapter III, Index #215 and Index #215.2."

The brief and meager findings of fact of the hearing officer are found in part F. These consist of the following: (1) the appellant is a noncommitted child whose

---

[1] The correct statutory citation is General Statutes § 17-134a.

medical needs are being covered under title XIX; (2) an orthodontic treatment program was recommended by his dentist; (3) this request was denied; and (4) on March 22, 1977, a "different Dental Review Team concurred with the denial dated 12/30/76." Thereafter, in part G, the hearing officer concluded: "Based on the *testimony and evidence presented* and in accordance with agency policy, the appellant's request for orthodontic work was properly denied." (Emphasis added.)

The plaintiff then appealed to the Superior Court pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act (hereinafter UAPA) from the hearing officer's decision upholding the agency's decision. The trial court sustained the plaintiff's appeal on many grounds. Finding that " 'there was, as a matter of law, but a single conclusion' which the Fair Hearing Officer could reasonably reach," the court remanded the case to the defendant, now the commissioner of income maintenance by succession,[2] with instruction to grant the plaintiff's request on behalf of her son that the orthodontic services be paid for or furnished under Medicaid.

I

In the first question presented for review, the defendant claims the court erred in concluding that the department's policy defined in its directive of October 1, 1973, and excluding orthodontic services from the stated Medicaid program is inconsistent with pertinent federal standards and the objectives of title XIX, thereby rendering the policy and the hearing officer's decision relying upon it void. The directive before the court is addressed to dentists and expresses the policies and procedures governing the provision and payment for

[2] Effective January 1, 1979, the commissioner of social services became the commissioner of income maintenance. Public Acts 1977, No. 77-614, §§ 608, 610.

dental services to beneficiaries of medical assistance under title XIX. Seven categories of treatment are specified for the dental care program. "Exclusive" (sic) services include orthodontics, with this proviso: "Special consideration may be granted, upon request, for these procedures of an unusual nature not included in the program, necessary to alleviate a serious health problem. In all such cases, the Dental Consultant shall have the sole responsibility of authorizing or denying such request, after reviewing all available supportive evidence of need."

Under the provisions of General Statutes § 17-134a the defendant "is authorized to take advantage of the medical assistance programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs,' contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ." Title XIX establishes the Medicaid program under which Connecticut, as a participating state, may furnish federally funded medical assistance to needy persons. 42 U.S.C. § 1396a (a) (13) (B) requires that the state plan for medical assistance must provide, as relevant here by virtue of the approved aid and assistance furnished to the plaintiff and her son, Donald Persico, under the aid to families with dependent children program,[3] "at least the care and services listed in clauses (1) through (5) of section 1396d (a)" of the Medicaid program. Clause (4) (B) of § 1396d (a) defines the term "medical assistance" to include "such early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions

---

[3] 42 U.S.C. § 1396a (a) (10) (A).

discovered thereby, as may be provided in regulations of the Secretary [of Health and Human Services, formerly Health, Education and Welfare]." The plaintiff's claim for orthodontic treatment of her son is made under this provision for early and periodic screening, diagnosis and treatment, commonly called EPSDT, of individuals under age twenty-one.

Pursuant to this statutory authority, the secretary has promulgated regulations which are binding upon the states to provide EPSDT. These define EPSDT to include "[h]ealth care, treatment, and other measures to correct or ameliorate any defects and chronic conditions discovered." 42 C.F.R. § 440.40 (b) (2). Under the regulations, "[a] State plan *must* provide that the Medicaid agency meets the requirements of §§ 441.56–441.62, with respect to EPSDT services, as defined in § 440.40 (b) of this subchapter." (Emphasis added.) 42 C.F.R. § 441.55. Section 441.56 (b) (2) stipulates as follows: "Treatment. In addition to any treatment services included in the plan, the agency must provide the following services, even if they are not included in the plan — (2) Dental care needed for relief of pain and infections, restoration of teeth and maintenance of dental health." The federal statutes further require that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of this title . . . ." 42 U.S.C. § 1396a (a) (17). "This language confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal* v. *Doe,* 432 U.S. 438, 444, 97 S. Ct. 2366, 53 L. Ed. 2d 464 (1977).

The initial question that these federal statutes and regulations raise when applied to the facts of this case is whether the exclusion of orthodontics in the state's plan or policy of October 1, 1973, subject to the proviso that special consideration may be granted for procedures of an unusual nature not included in the program necessary to alleviate a serious health problem upon the sole authority of the dental consultant, after reviewing all available supportive evidence of need, constitutes a "reasonable" standard for determining eligibility for and the extent of medical assistance under the state plan consistent with the objectives of Medicaid. We conclude that as to this proviso the state policy of October 1, 1973, does not meet the federal requirements and is, therefore, void. The state's policy of excluding orthodontia with a discretionary proviso, indefinite in nature and stricter than the federal requirements, does not comply with the federal regulations as to EPSDT services that the state pay under its Medicaid program for "[d]ental care needed for relief of pain and infections, restoration of teeth and maintenance of dental health." 42 C.F.R. § 441.56 (b) (2). As the trial court below noted so aptly, "[t]here is a wide divergence between that which is necessary for maintenance of dental health as required by federal standards and that which is necessary to alleviate a serious health problem under the *Policy.*" The federal statutes and regulations set a limit upon the authority of the defendant as well as furnishing a guide to the state's administration of the Medicaid program. "[T]hus, where the state sets stricter standards for eligibility than those enumerated by the pertinent federal law, the state standards are tacitly inconsistent with those federal provisions." *Morgan* v. *White,* 168 Conn. 336, 344, 362 A.2d 505 (1975).

The defendant's refusal to provide orthodontic treatments under its Medicaid program for Donald Persico was based on the policy of October 1, 1973, excluding such services. The policy's denial of orthodontic treatments to EPSDT beneficiaries, such as the plaintiff's son, violates the federal statutes and regulations and is, therefore, illegal and void.

In *Brooks* v. *Smith*, 356 A.2d 723 (Me. 1976), facts parallel to those in the case now being considered were presented. The plaintiff mother sought orthodontic treatment for her daughter's oral deformity. Although orthodontia was recognized as greatly needed by the child, the state agency's medical consultant denied approval of the necessary payment for such dental care on the ground that "the Medicaid Dental Program does not cover orthodontia." The fair hearing officer also recognized the need of orthodontia, but likewise found no error in the refusal of payment because it "was based on the fact that this type of care is not covered by the rules and regulations." The Superior Court, upon appeal, reversed the fair hearing officer after finding that the child was entitled to orthodontic treatment under the Medicaid statutes and regulations and the Maine Medical Assistance Manual.

The Supreme Judicial Court of Maine in *Brooks* observed (p. 727) that the position of the Maine Medicaid agency "was not that the federal statutes and regulations *forbid* the State's furnishing orthodontic treatment but, instead, that they do not *require* it and that the [Maine] Department [of Health and Welfare] was free to adopt regulations excluding such treatment in order to utilize more advantageously the limited funds available to it." The court did not agree.

The conclusion of the Maine court supporting payment for orthodontic treatment of the minor child was

predicated upon 42 U.S.C. § 1396a (a) (13) (B) requiring EPSDT for individuals under the age of twenty-one, pursuant to § 1396d (a) (4) (B), and 45 C.F.R. § 249.10 (a) (now substantially 42 C.F.R. § 441.56 [b] [2]), requiring that a state agency provide dental care needed for relief of pain and infections, restoration of teeth and maintenance of dental health. With regard to the state's authority to impose utilization control, the court stated (p. 728) that that was not a grant of authority under Medicaid "to make available *less* treatment than that mandated by the federal regulation — that is, such 'as is necessary for restoration of teeth and maintenance of dental health.' " Applying the rule of liberal construction in furtherance of the beneficent purposes for which the remedial legislation of Medicaid was enacted, the court found (pp. 729–30) that orthodontia for the claimant, although not mentioned specifically in the federal regulations, was intended to be included in "treatment *necessary* for the maintenance of her dental health" and the medical necessity for such treatment was not contradicted by the commissioner to support his denial of this benefit. The court, therefore, affirmed the payment and denied the state's appeal.

The United States Court of Appeals for the Third Circuit, in *Philadelphia Welfare Rights Organization* v. *Shapp,* 602 F.2d 1114 (1979), cert. denied sub nom. *Thornburgh* v. *Philadelphia Welfare Rights Organization,* 444 U.S. 1026, 100 S. Ct. 689, 62 L. Ed. 2d 660 (1980), adopting the holding in *Brooks,* also ruled (p. 1123) that the federal regulations implementing the EPSDT program mandated "the provision of all dental services, including orthodontia, 'needed for relief of pain and infection, restoration of teeth, and maintenance of dental health.' "

The hearing officer in his decision in the present case also relied upon another relevant agency policy, namely: "2. [Department of Income Maintenance] Manual Volume 3, Chapter III, Index #215 and Index #215.2." Index No. 215, revised to January 3, 1976, in relevant part, provided as follows: "*Dental Care*. Public Assistance recipients and children committed to the Commissioner of Children and Youth Services are eligible for necessary dental care. Dental care includes examination and preventive and remedial services from the dentist or clinic of their choice. *General Policies*. All procedures except emergency care require prior authorization by the Department of Social Services Dental Consultant . . . . All other services require the Dental Consultant's authorization, based on the dentist's estimate of the minimum adequate needs of the patient, prior to performance . . . . *Remedial*. Remedial services, all of which require prior authorization by the Dental Consultant, include . . . in certain circumstances, orthodontia." Index No. 215.2, revised to June 11, 1969, outlined the procedure to be followed for orthodontic treatment when needed because of a cleft palate. We conclude that the policies of the defendant as expressed in the Department of Income Maintenance Manual, index No. 215 and index No. 215.2, like the policy defined in the instructional statement of October 1, 1973, also fail to meet the minimum standard set by federal law and regulation, and are, therefore, invalid and void.

Title XIX establishes two groups of needy persons: (1) the "categorically" needy, which includes needy persons, such as the plaintiff, with dependent children, and the aged, blind and disabled; 42 U.S.C. § 1396a (a) (10) (A); and (2) the "medically" needy, which includes other needy persons. 42 U.S.C. § 1396a (a) (10) (C). Participating states, such as Connecticut, are required to

extend Medicaid coverage to the "categorically" needy, but not to the "medically" needy. *Beal* v. *Doe,* supra, 440 n.1. Under the provisions of 42 C.F.R. § 440.210, a state plan must specify that, as a minimum, "categorically" needy recipients are provided the services specified in, inter alia, § 440.40. Section 440.40 (b) defines EPSDT to mean: "(1) Screening and diagnostic services to determine physical or mental defects in recipients under age 21; and (2) Health care, treatment, and other measures to correct or ameloriate any defects and chronic conditions discovered. (See Subpart B of Part 441 of this subchapter.)"

Subpart B of part 441 relates entirely to EPSDT of individuals under the age of twenty-one. Section 441.50 thereof, entitled "Basis and purpose," states: "This subpart implements — (a) Section 1905 (a) (4) (B) of the Social Security Act, by prescribing State plan requirements for providing early and periodic screening and diagnosis of eligible Medicaid recipients under age 21 to ascertain physical and mental defects, and providing treatment to correct or ameliorate defects and chronic conditions found . . . ." Section 441.55 provides that "[a] State plan must provide that the Medicaid agency meets the requirements of §§ 441.56–441.62, with respect to EPSDT services, as defined in § 440.40 (b) of this subchapter." The required services listed in § 441.56 (b) are the following: *"Treatment.* In addition to any treatment services included in the plan, the agency must provide the following services, even if they are not included in the plan — . . . (2) Dental care needed for relief of pain and infections, restoration of teeth and maintenance of dental health."

Relevant to these provisions for EPSDT of individuals under age twenty-one is also 42 C.F.R. § 440.100 (a): " 'Dental services' means diagnostic, preventive, or corrective procedures provided by or

under the supervision of a dentist in the practice of his profession, including treatment of — (1) The teeth and associated structures of the oral cavity; and (2) Disease, injury, or impairment that may affect the oral or general health of the recipient." Finally, under 42 C.F.R. § 440.230, further requirements and limitations are specified as follows: "(a) The plan must specify the amount, duration, and scope of each service that it provides for — (1) The categorically needy . . . (2) . . . (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose. (c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service [for the categorically needy under § 440.210] . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition. (d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."

The policy of the defendant expressed in the Department of Income Maintenance Manual, Volume 3, Chapter III, index No. 215 and index No. 215.2, as does the policy statement of October 1, 1973, fails to meet the minimum federal standard under these regulations for EPSDT of Donald Persico. The state's policy expressed in index No. 215 and index No. 215.2 is, therefore, invalid and void and cannot support the denial of medically necessary orthodontia.

The fair hearing officer based his conclusion that Donald Persico's request for orthodontic work was properly denied "on the testimony and evidence presented and in accordance with agency policy [1. Instructions to Participating Dentists dated 10/1/73 from the Commissioner of the Department of Social Services. 2. Manual Volume 3, Chapter III, Index #215 and Index #215.2]." Since these two policy statements

are invalid and void as contrary to federal law and regulations, the fair hearing officer's reliance upon them cannot stand and his decision was properly overruled by the trial court.

## II

The lower court ruled that even if federal standards were not violated by the exclusion of orthodontia, a decision based by the fair hearing officer on the policy directive of October 1, 1973, must be reversed because the policy falls within the definition of a "regulation" under the Uniform Administrative Procedure Act (hereinafter UAPA). General Statutes §§ 4-166 through 4-189. Since it was not adopted pursuant to the statutory requirements, it is, therefore, void and invalid.

The defendant claims that the "Directive" of October 1, 1973, effected no substantive change as to the state's regulation, policy and plan in existence prior to January 1, 1972.[4] It is his contention that insofar as orthodontia under the Medicaid program is concerned, "the Directive dated October 1, 1973 is nothing more than a clarification of an existing State welfare regulation and State Plan which initially came into effect prior to January 1, 1972." Therefore, he states, "[i]f the administrative rule in question does not have a substantial impact on the rights and obligations of parties in future hearings, it is not a substantive or legislative rule." A second claim is that, in any event, the time for contesting the "Directive" has expired because § 4-168 (c) stipulates that "[a] proceeding to contest any regulation on the ground of noncompliance with the procedural requirements of this section shall be commenced within two years from the effective date of the regulation." A third claim is that the "Directive" of

---

[4] The UAPA became effective on this date. Public Acts 1971, No. 854, § 21.

October 1, 1973, and the original regulation pertaining to orthodontia are merely interpretive of the federal Medicaid statutes and regulations and need not comply with the review, notice and hearing requirements of the UAPA, even if considered substantive provisions, because the various participating states act as agents for the federal government in carrying out the provisions of the federal Medicaid program. Since the defendant did not act as an agent of the state but as an agent for the federal government, the defendant claims that "UAPA has no application to the Directive dated October 1, 1973 and to the original regulation pertaining to orthodontia in existence prior to January 1, 1972."

The department of income maintenance, like its predecessor department of social services,[5] is subject to the provisions of the UAPA. The UAPA specifies the procedure for the adoption, amendment, or repeal of administrative regulations. See General Statutes §§ 4-168, 4-169, 4-170 and 4-172. The defendant denies the applicability of these requirements to what he denominates a "Directive."

" 'Regulation' means each agency statement of general applicability, without regard to its designation, that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public . . . or (C) intraagency or interagency memoranda." General

---

[5] On January 1, 1979, by reorganization of the executive branch of the state government, the department of income maintenance became the successor department to the department of social services. Public Acts 1977, No. 77–614, §§ 608 through 610. See footnote 2, supra.

Statutes § 4-166 (7). A "regulation" is a regulation by whatever designation it is called. " 'The criteria that determine whether administrative action is a "regulation" are neither linguistic nor formalistic. It is not conclusive that an agency has, or has not, denominated its action a "regulation" or that it has, or has not, promulgated it procedurally in the fashion that would be required of a "regulation." *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 362, 417 A.2d 358 (1979); *Lewis-Mota* v. *Secretary of Labor,* 469 F.2d 478, 481–82 (2d Cir. 1972). See also *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 345, 348 A.2d 596 (1974). The test is, rather, whether "a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future." *Salmon Brook Convalescent Home, Inc.,* supra, 362.' (Footnote omitted.) *Maloney* v. *Pac,* 183 Conn. 313, 325–26, 439 A.2d 349 (1981)." *Walker* v. *Commissioner,* 187 Conn. 458, 462–63, 446 A.2d 822 (1982). "Implicit in this formulation is the recognition that a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time." *Maloney* v. *Pac,* supra, 326.

Measured by these criteria, the state's policy of October 1, 1973, is clearly a regulation. It is a public statement to dentists in general, covering, by its declaration of purpose, "policies and procedures governing the billing and payment for dental service to welfare recipients who are eligible for medical assistance under Title XIX." Its provisions have general applicability, implementing, interpreting and prescribing Medicaid policy for dental services to eligible welfare recipients. To the dentists it describes the eligibility requirements of the agency and the practice and procedure for obtaining state payment for covered

dental work. The policy constitutes a rule of sufficient generality to impinge substantially on dentists and their welfare patients who will deal with the agency at a future time. By its precise terms it is clearly not an interdepartmental statement or memorandum "concerning only the internal management of" the department which does not affect "private rights or procedures available to the public." The policy promulgated by the defendant's predecessor agency on October 1, 1973, is unmistakably a regulation under the UAPA. See General Statutes § 4-166 (7).

The subordinate claim that "the Directive dated October 1, 1973 is nothing more than a clarification of an existing State welfare regulation and State Plan which initially came into effect prior to January 1, 1972" is self-defeating. A "clarifying" revision of a regulation, even if that were the case here, which it is not, would constitute an amendment of the regulation and come within the express terms of the defining statute, § 4-166 (7), which extends the meaning of "regulation" to include "the amendment . . . of a prior regulation."

The conclusion of the court that the policy of October 1, 1973, is an administrative regulation is confirmed by the agency's use and reliance upon it to affect the "private rights" of the plaintiff and her son. The fair hearing officer in his decision relied upon these instructions to participating dentists as the basic agency policy "in accordance with [which] . . . the appellant's request for orthodontic work was properly denied." Similarly, the dental review team in its report to the fair hearing officer concluded that the "directive dated October 1, 1973 excludes orthodontic treatment from reimbursable dental services."

The defendant's further claim, however, that even if the policy of October 1, 1973, falls within the definition of "regulation" within the UAPA, any challenge to its validity in this action is barred by the restriction of § 4-168 (c) limiting any proceeding to contest a regulation on the ground of noncompliance with the procedural requirements of the UAPA to "two years from the effective date of the regulation." This provision has never before been construed by our courts.

Since, however, this question was not raised in the court below, it cannot be raised for the first time on appeal. "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 3063. "Claims of law, to receive consideration in this court, must have been raised in the court below. They may not for the first time be raised here." *Bigionti* v. *Argraves,* 152 Conn. 700, 701, 204 A.2d 408 (1964). This rule alerts the trial court to possible errors while there is still opportunity to correct them. *State* v. *Simms,* 170 Conn. 206, 212, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976).

"While we are not 'bound to consider' such claims of error, and do not ordinarily do so, we have upon occasion considered a question which was not so raised, not by reason of the appellant's right to have it determined but because in our opinion in the interest of public welfare or of justice between individuals it ought to be done." *Leary* v. *Citizens & Manufacturers National Bank,* 128 Conn. 475, 478–79, 23 A.2d 863 (1942). "We have held that, although an assignment was defective, important rulings might be considered where counsel make them definite in their briefs." *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971). It appearing that the limiting statute was overlooked in the court below and

that public welfare would be best served by resolving this issue, we will consider this claim of the defendant.

General Statutes § 4-168 (c) in its entirety reads as follows: "No regulation adopted after January 1, 1972, is valid unless adopted in substantial compliance with this section. A proceeding to contest any regulation on the ground of noncompliance with the procedural requirements of this section shall be commenced within two years from the effective date of the regulation." Thus, there are two separate parts to this statute. The first part of § 4-168 (c) is designed to protect the public from regulations adopted under any name or classification without observing the procedural safeguards in the UAPA for the information, input and review of the public. The second part of the law, the statute of limitations, applies specifically to "[a] proceeding to contest any regulation on the ground of [procedural] noncompliance" in its adoption. Such a proceeding can be initiated by a party plaintiff only after a regulation has been admitted or identified to be such prior to the court proceeding. Otherwise, administrative agencies could ambush the public by adopting regulations under "pseudonyms" to which the statutory steps for adopting regulations would appear not to apply until too late. Such would be the case here where the defendant would have us apply the statutory restriction after a long-delayed reclassification of what was properly, but not known to be, a regulation at its origin. The limitation of action in § 4-168 (c) is inapplicable to this administrative appeal.

The last claim of the defendant relevant to the administrative classification of the policy of October 1, 1973, contends that this "Directive" is simply interpretive of the federal Medicaid statutes and regulations and is not subject to the "regulation" requirements of the UAPA, even if considered substantive pro-

visions. This is so, according to the defendant, because the department of income maintenance, as was its predecessor, is not a state agency in this regard, but an agent of the federal government in administering the national Medicaid program locally.

The answer to this unusual claim is found in the federal and state statutes. 42 U.S.C. § 1396 authorizes annual federal Medicaid appropriations to "States which have submitted, and had approved . . . plans for medical assistance." Reciprocally, in enacting General Statutes § 17-134a our legislature has authorized the defendant to accept the federal Medicaid grants and administer them in accordance with the federal requirements. To implement the state program, the defendant, under § 17-134d, must "make such regulations as are necessary to administer the medical assistance program." To these regulations, such as the policy of October 1, 1973, the provisions of the UAPA prescribing a statutory method for the adoption, amendment or repeal of any regulation, §§ 4-168, 4-169, 4-170 and 4-172, apply.

As a regulation subject to the UAPA, the defendant's policy of October 1, 1973, was required to be promulgated with certain formalities. Since this policy was not adopted in accordance with the procedural requirements of §§ 4-168, 4-169, 4-170 and 4-172, it may not be enforced to deny the plaintiff's application for Medicaid funds to pay for Donald Persico's medically necessary orthodontic treatment.

### III

After determining that more than ninety days had elapsed between the date of the plaintiff's request for a fair hearing and the date of the officer's decision, the

court held that the violation of the ninety day rule required the defendant to grant the relief requested. The defendant claims error in this ruling.

On January 28, 1977, the plaintiff requested a fair hearing to determine whether title XIX covered the cost of her son's orthodontic work. The fair hearing was held on February 24, 1977. The officer's decision was rendered on June 13, 1977, 136 days after the request for such hearing. The defendant concedes that state law and federal regulations require him to take definitive administrative action within ninety days after the fair hearing request, but blames the plaintiff's counsel for delaying the decision by requesting a resumption of the fair hearing. For this purpose the defendant unsuccessfully sought to amend the administrative record in the lower court by submitting as exhibits correspondence between the plaintiff's counsel and the fair hearing officer.[6] He also claims error in this ruling.

42 U.S.C. § 1396a (a) requires that "[a] State plan for medical assistance must . . . (3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 C.F.R. § 431.244 (f) promulgated under title XIX requires that "[t]he agency must take final administrative action within 90 days from the date of the request for a hearing." General Statutes § 17-2b tracks the federal regulation and provides that "final definitive administrative action

---

[6] The defendant also sought to introduce the report of the dental review team to the fair hearing officer dated March 22, 1977. Insofar as this report was contained in the decision of the fair hearing officer appealed from to the court and properly in the record, this effort was unnecessary and the defendant makes no claim of error relative to the court's denial to make this report an exhibit.

shall be taken by the commissioner or his designee within ninety days after the request of such [fair] hearing pursuant to section 17-2a."

The lower court based its ruling on *Labbe* v. *Norton,* U.S. District Court, D. Conn., Docket No. H-136, November 4, 1974. In *Labbe* the court considered a similar ninety day rule; 45 C.F.R. § 205.10 (16); to titles I, IV-A, X, XIV and XVI, the Social Security Act, and ordered, except where a petitioner for a fair hearing has requested a delay, or has failed to appear for a scheduled hearing, that the defendant's predecessor "grant whatever relief is requested in fair hearing requests filed by applicants for and recipients of categorical assistance benefits . . . in whose cases final administrative action is not taken within ninety (90) days of the date they originally filed their request for a fair hearing . . . ." Since *Labbe* was a proper class action, its ruling was held to apply to all applicants for fair hearing.

We find that the *Labbe* rule applies to the same provision for ninety day administrative adjudication of Medicaid claims found in 45 C.F.R. § 431.244 and in General Statutes § 17-2b, and now before the court. Section 4-180 (b) of the UAPA which provides that if an administrative agency fails to render a final decision in a contested case following the close of evidence and filing of briefs as required by subsection (a), a party or interested person may seek a Superior Court order requiring the agency to render a decision forthwith, after hearing, is inapplicable to the case before the court. The relevant federal regulation applicable here takes precedence in judicial consideration of the question.

In *Labbe,* the court made a single exception to the ninety day requirement for a fair hearing decision "in those cases in which the petitioner for a fair hearing

has requested a delay, or has failed to appear for a scheduled hearing." In the present case the defendant claims that the plaintiff's counsel delayed the officer's decision by requesting a resumption of the fair hearing. To establish such delay the defendant sought to amend the administrative record in the lower court by submitting as exhibits correspondence between the plaintiff's counsel and the fair hearing officer. The court rejected this offer of evidence as being beyond the administrative record in the appeal before it. In this the court erred. Under *Labbe,* the defendant should have been allowed to prove that the delay in the fair hearing officer's decision resulted from the plaintiff's request.

## IV

Since there was, in the judgment of the lower court, as a matter of law, but a single conclusion which the fair hearing officer could have reasonably reached, the court, after sustaining the appeal, pursuant to § 4-183 (g) modified the decision appealed from because it was " 'clearly erroneous in view of the reliable, probative and substantial evidence on the whole record' " and remanded the matter to the defendant with direction to grant the requested relief. The defendant claims this was an erroneous substitution of the court's judgment for that of the defendant. We agree.

Section 4-183 (g) of the UAPA provides that "[t]he court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." On appeal from the final order of an

administrative agency, such as the defendant, the trial court does not try the case de novo. It is not the function of the court to adjudicate the facts. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence. *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, 214, 377 A.2d 290 (1977). "This so-called substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

Our review of the record discloses that the court erred in holding that as a matter of law there was substantial evidence to support the plaintiff's application before the fair hearing officer. Other than the dental description of Donald Persico's malocclusion in the appraisal of Edelstein submitted to the fair hearing officer, there was no medical or dental testimony presented at the hearing in support of the medical necessity for the requested orthodontic treatment. The testimony of Stone, a protective services worker of the department of children and youth services, and Spurr, a registered nurse and child care worker at the Curtis Home, described the misalignment of the boy's teeth, including one instance of bleeding from soreness of the gums, and the psychological behavior appearing to result from his dental problems. The totality of the evidence before the fair hearing officer cannot be said

to constitute "substantial evidence," as a matter of law, supporting the court's finding that only one conclusion supporting the plaintiff's application could be reached, thereby compelling a modification of the administrative decision and directed order to the defendant. The trial court failed to make the finding required under the EPSDT program for the requested Medicaid payment that the orthodontic treatment of Donald Persico was "needed for relief of pain and infections, restoration of teeth and maintenance of dental health." 42 C.F.R. § 441.56 (b) (2). The court's conclusion that the decision of the fair hearing officer was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" is, therefore, unsupported. General Statutes § 4-183 (g) (5).

We conclude that the lower court exceeded its scope of review beyond the statutory circumscription by substituting its judgment for that properly reserved to the administrative agency. The court should have gone no further than to have sustained the appeal. "It is well established that where a trial court has found that an administrative agency has made invalid or insufficient findings, such court must remand the matter to the agency for further proceedings. *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 345 A.2d 9 [1974]; *Watson* v. *Howard,* 138 Conn. 464, 86 A.2d 67 [1952]." *Hartford* v. *Hartford Electric Light Co.,* 172 Conn. 71, 73, 372 A.2d 131 (1976).

## V

The lower court further held that the decision of the fair hearing officer required reversal because of what it termed "unusual procedure employed by him." After the hearing was closed, the officer solicited the opinion and accepted into evidence a report of a second dental review team without giving the plaintiff an opportunity

to confront or to cross-examine its authors. The defendant claims that the court erred in this conclusion. We do not agree.

In his memorandum of decision the fair hearing officer asserts that "[s]ubsequent to the hearing, a transcript of the Fair Hearing notes, and evidence marked exhibits A, B, C, and D were submitted to a different Dental Review team." The report of this dental review team is set forth fully in the fair hearing officer's recital of the evidence before him. This team submitted its professional conclusion as follows: "On the basis of the above and because the transcript provides no medical evidence that denial of orthodontic treatment would be detrimental to the health of the patient, we concur with the decision made by the Dental Consultant to deny the request for orthodontic treatment. Also directive dated October 1, 1973 excludes orthodontic treatment from reimbursable dental services."

In submitting the transcript and evidence before him to the dental review team for its evaluation and conclusion as part of his determination of the minor child's right to orthodontic treatment under Medicaid, the fair hearing officer violated the precise requirements of the federal regulations pertinent to his duties under title XIX. 42 C.F.R. § 431.240 governs the conduct of fair hearings and provides in subsection (b) that if the hearing officer considers it necessary to have a medical assessment, such medical assessment by a physician or review team must be made a part of the hearing record. The procedural rights of the applicant at the hearing are recited in 42 C.F.R. § 431.242. Subsection (a) (2) specifies that the applicant must be given an opportunity to examine at a reasonable time before the date of hearing and during the hearing all documents and records to be used by the agency at the hearing.

Subsection (e) further provides that the applicant must be given the opportunity to question or to refute any testimony or evidence, including an opportunity to confront and cross-examine adverse witnesses.

The fair hearing officer violated these federal regulations by not making the dental review team's report a part of the hearing record available for examination by the plaintiff with opportunity to question or refute such evidence. Whether the members of the dental review team were adverse witnesses need not be decided here, but their conclusions should have been available to the plaintiff for refutation at the fair hearing.

There is error in part, the case is remanded to the trial judge for the sole purpose of determining whether the delay in the decision of the fair hearing officer was brought about as a result of the plaintiff's request. If the trial judge so finds then the judgment is set aside and the trial court is directed to render a judgment sustaining the appeal. If the trial judge does not so find then there is no error.

In this opinion the other judges concurred.