Plaintiff John J. Camillo appeals the decision of the defendant Gaming Policy Board (Board) of the defendant Department of Revenue Services (Department) which sustained the decision of the defendant Division of Special Revenue (Division) revoking the plaintiff's license as a jai alai player. The defendants revoked the plaintiff's license pursuant to General Statutes 12-574 (i) and (j). He appeals to this court pursuant to4-183.
Certain essential facts are not disputed. On March 25, 1991, the Division sent the plaintiff a notice summarily suspending his license to act as a jai alai player at the Bridgeport Jai Alai Fronton. The Division took this action as a result of its investigation of allegations that the plaintiff had wagered on a jai alai game on April 15, 1989, in violation of Regulations of State Agencies12-574-D26(k). As required by General Statutes 12-574 (i), the Division scheduled a hearing to be conducted in accordance with the Uniform Administrative Procedure Act, General Statutes 4-166
et seq., on March 25, 1991. The notice to the plaintiff included the following statement:
 You, of course, may be accompanied by your attorney. If you desire more specifics and/or more time, you may request the same in writing prior to four (4) business days in advance of the scheduled hearing.
The plaintiff did not request a continuance of the hearing, nor did he request a more detailed statement of the charges. He appeared at the hearing pro se and stated that he understood that he had the right to be represented by an attorney. The hearing was conducted by Edward F. Osswalt, Unit Chief of the Division, as designee of the Executive Director in accordance with General Statutes 12-574 (i). At the hearing, the Division produced evidence CT Page 5525 in the form of testimony and documents tending to show that on April 16, 1989, the plaintiff requested another individual, Michael Casey, to cash three winning pari-mutuel tickets that the plaintiff owned. This evidence tended to show further that Michael Casey and his brother, John Casey, did cash the tickets and remitted the proceeds, minus a "cashing fee", to the plaintiff. The tickets were on a game in which the plaintiff participated the day before, April 15, 1989, at the Bridgeport Jai Alai Fronton.
Based on the evidence summarized above, Unit Chief Osswalt concluded that the plaintiff had violated state regulations prohibiting licensed jai alai players from wagering on professional jai alai games and recommended that his license be revoked. The Executive Director of the Division adopted the recommendation and issued the final decision on July 1, 1991. On July 17, 1991, the plaintiff requested the Division to reconsider the decision. On August 8, 1991, the Division denied the request. Pursuant to General Statutes 12-574 (j), the plaintiff appealed the Division's decision to the Board. In that appeal, the plaintiff was represented by counsel, who filed briefs and made oral argument. On December 19, 1991, the Board affirmed the Division's decision and dismissed the plaintiff's appeal. Since the decision of the defendants revoked the plaintiff's license to act as a jai alai player, a significant personal and legal interest, the court finds that the plaintiff is aggrieved within the meaning of General Statutes 4-183
and Light Rigging Co. v. Dept. of Public Utility Control,219 Conn. 168, 173 (1991). In his brief, the plaintiff advances three bases for his appeal to this court. The court considers each contention separately. The plaintiff first claims that the defendants misinterpreted the state regulation which prohibits wagering by applying it to the facts of this case, where the plaintiff acted through an agent. The applicable regulation, section 12-574-D26 (k), reads as follows:
 (k) Wagering prohibited. No player under contract at a fronton, or his wife or blood relatives, may wager money or any other thing of value on the results of games played at any board licensed fronton.
The plaintiff argues that the evidence in the record proves, at most, that any wagering was done by Michael and John Casey cashing them in. acting as the plaintiff's agents. There is no evidence, he argues, to support the finding that he personally wagered. The plaintiff further argues that this regulation, in the context of a license revocation proceeding, is penal in nature and must be strictly construed. Therefore, he claims, the defendants erred in applying the regulation to the facts of this case because it does not specifically prohibit a player from wagering through an agent.
"Judicial review of conclusions of law reached administratively CT Page 5526 is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." CLP v. DPUC, 219 Conn. 51, 57-58 (1991). Similarly, "it is the court's practice to accord great deference to the construction given a statute by the agency charged with its construction . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489 (1986).
In the present case, the court concludes that the defendants' interpretation of the regulation is entirely reasonable in view of its obvious, legitimate purpose of preventing players from rigging the outcome of jai alai games for their own profit and at the expense of the public. Virtually all professional sports have similar rules and for the same purpose. Under the plaintiff's restricted interpretation of the regulation, however, whole groups of jai alai players could rig games and "wager" on the results by the simple stratagem of hiring messengers to place their bets and collect their inevitable winnings. Although there is no evidence of any such conspiracy here, the plaintiff's argument that he should be able legally to evade the prohibition merely by hiring a bagman would, if adopted, totally nullify the effect of the regulation. Statutory and regulatory interpretation must meet the test of common sense. Shelby Mutual Ins. Co. v. Della Ghelfa, 200 Conn. 630,638 (1986). The plaintiff's argument fails that test. The second basis of the plaintiff's appeal is that, even if the anti-wagering regulation applies to wagering conducted through an agent the conduct which the defendants allege in this case does not come within the definition of wagering in the regulations. The applicable regulation, section 12-574-D2a(51), provides as follows:
 (51) Wagering. This shall be deemed to include both the purchasing and cashing of tickets.
Again, the plaintiff argues for a restrictive interpretation on the basis that the regulation has a punitive effect in his case. He contends, therefore, that there must be evidence that a person both purchased and cashed a ticket in order to prove that he "wagered" within the meaning of this regulation. He argues further that there is no evidence in the record in this case that shows that he purchased the tickets or how he came into possession of them. Therefore, he argues, the evidence is insufficient to establish wagering.
The plaintiff's second argument, as summarized above, is not persuasive. The defendants' interpretation of the regulation is that either of the two distinct activities, purchasing and cashing tickets, is sufficient to constitute wagering. The court agrees that such interpretation is the more reasonable. First, it best accords CT Page 5527 with the plain meaning of the text. The use of the word "include" indicates that both purchasing and cashing are contained within the definition of "wagering", so that the term is broad enough in its meaning to cover either activity alone. Secondly, the defendants' interpretation accords best with common sense. Adopting the plaintiff's view would mean that a player could avoid the prohibition against wagering by purchasing tickets and selling them or giving them away, or accepting tickets from someone else and In either scenario, the player would be significantly participating in the gambling enterprise, but the prohibiting regulation would be rendered essentially unenforceable. The plaintiff's interpretation would thus lead to a bizarre and unreasonable result. Under these circumstances, the court must accord great deference to the defendants' interpretation. Griffin Hospital v. Commission, supra.
The plaintiff's third argument is that the evidence was insufficient to support the defendants' finding that the tickets were owned by him. At the administrative hearing, Michael Casey testified that he received the tickets from the plaintiff and that he remitted the proceeds to the plaintiff after cashing them. In opposition, the plaintiff testified that Casey owned the tickets and he brought out that Casey had at one time told the Division's investigator that the tickets belonged to Casey. Casey then testified, again, that he received the tickets from the plaintiff and that his. prior statement to the investigator was incorrect.
The plaintiff essentially asks the court to step in and resolve the factual dispute arising from the conflicting testimony of Casey and the plaintiff. Under statute and case law, however, this court's scope of review of administrative decisions is very limited. General Statutes 4-183 provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." See, also, Feinson v. Conservation Commission, 180 Conn. 421, 425 (1980), and numerous cases cited therein; holding that "[t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Furthermore, "[t]he court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence." Persico v. Maher, 191 Conn. 384, 409 (1983). As summarized above, there was direct testimony by Michael Casey that he received the tickets from the plaintiff, cashed them at the plaintiff's request, and delivered the proceeds to the plaintiff. This court finds that evidence to be substantial. That being so, the defendants' decision must be affirmed notwithstanding the fact that the plaintiff presented conflicting evidence. It was for the Division's Unit Chief, as trier of the facts, not this court, to weigh the evidence and make findings of fact. CT Page 5528
For all of the reasons set forth above, the court affirms the decision of the defendant Board.
The plaintiff's appeal is dismissed.