HENRY O. BRIGGS *v.* STATE EMPLOYEES
RETIREMENT COMMISSION
(5570)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 2, 1987—decision released February 23, 1988

*Edward Gallant,* with whom, on the brief, was *Peter F. Culver,* for the appellant (plaintiff).

*Richard T. Sponzo,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the judgment of the trial court affirming a decision of the defendant state employees retirement commission. That decision denied the plaintiff's application for service connected disability retirement benefits pursuant to General Statutes § 5-169 (b). The dispositive issue of this appeal is whether the decision of the defendant was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." General Statutes § 4-183 (g) (5). We conclude that the decision was clearly erroneous, and we find error.

In December, 1979, the plaintiff was a mental health worker at Norwich Hospital, a state facility, when he was physically assaulted by a violent patient. In April, 1984, the hospital, acting pursuant to General Statutes § 5-244,[1] requested the personnel division of the state

---

[1] General Statutes § 5-244 provides in pertinent part: "When [a state] employee has become physically or mentally incapable of . . . the effi-

department of administrative services to seek a position for the plaintiff requiring less arduous duties. This request was predicated on the plaintiff's injuries suffered in December, 1979. The personnel division was unable to do so. In July, 1984, the plaintiff filed an application for service connected disability retirement benefits pursuant to General Statutes § 5-169 (b),[2] claiming that as a result of the December, 1979 attack he was permanently disabled from continuing to render service as a mental health worker. His claim had two medical bases: (1) injuries to his back, supported by reports of his orthopedic surgeon; and (2) psychiatric disability, supported by reports of his psychiatrist.

In October, 1984, a hearing on the plaintiff's application was held before the medical examining board pursuant to General Statutes § 5-169 (c).[3] At this hearing, the plaintiff testified and introduced medical

cient performance of the duties of his position, by reason of infirmities due to advanced age or other disability, the appointing authority shall recommend to the commissioner of administrative services that the employee be transferred to less arduous duties or separated from state service in good standing."

[2] General Statutes § 5-169 (b) provides in pertinent part: "If a member [of the state employees retirement system], while in state service, becomes permanently disabled from continuing to render the service in which he has been employed as a result of any injury received while in the performance of his duty as a state employee, such member is eligible for disability retirement regardless of his period of state service."

[3] General Statutes § 5-169 (c) provides: "The governor shall appoint a board of seven physicians, each of whom is a state employee and two of whom shall be experienced in psychiatry, to serve at his pleasure as a medical examining board to determine whether each applicant for disability retirement is entitled thereto. Three of such members, one of whom shall be the elected chairman or the elected secretary of the board, shall constitute a quorum for the determination of any applicant's entitlement. The chairman or the secretary shall report the findings of the board to the retirement commission from time to time as requested by the commission as to the entitlement of each applicant or the continuance of disability of members so retired. The comptroller is authorized to pay for stenographic and professional services as requested and approved by the board."

reports by his orthopedic physician[4] and by Michael P. O'Brien, the psychiatrist who treated him for his condition resulting from the 1979 attack. In November, 1984, the board denied the plaintiff's application. The plaintiff then requested a reconsideration of the board's decision. The board held a second hearing and, in May, 1985, again denied the plaintiff's application. The plaintiff then requested the defendant commission to review the board's decision. The defendant adopted the board's decision.[5] The plaintiff appealed to the Superior Court, which affirmed the defendant's decision. This appeal followed.

The plaintiff claims that the trial court erred in sustaining the defendant's decision because (1) the decision was not based on substantial evidence, and (2) the defendant employed an erroneous legal standard.[6] We agree with the plaintiff's first claim of error, and therefore need not reach his second claim.

General Statutes § 4-183 (g) provides in pertinent part that, in an administrative appeal such as this case, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify

[4] Although in this appeal the plaintiff has not abandoned his claim that the defendant improperly rejected his claim of an orthopedic disability, the principal thrust of his appeal focuses on his psychiatric disability. Since we find error regarding that disability, it is not necessary to discuss the plaintiff's orthopedic disability.

[5] The defendant commission concluded (1) that it deferred, as an administrative policy, to the board's judgment in disability cases, because it lacked the expertise to judge the medical evidence independently, and (2) that the statute creating the board was intended to make the board the final administrative arbiter of medical issues. The plaintiff does not challenge these determinations. We therefore consider the decision of the board as that of the defendant commission.

[6] The plaintiff also claims that the decision denied him due process of law. This claim, however, is simply a conclusion based solely on his first two claims. We therefore do not regard it as a separately presented claim of error.

the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . "

This standard has been recently and exhaustively explained. We must sustain the agency decision if any one of its reasons is supported by substantial evidence, leaving the credibility of witnesses within the agency's province. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 539–41, 525 A.2d 940 (1987). " 'This so-called substantial evidence rule is similar to the "sufficiency of the evidence" standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords "a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." . . . "The 'substantial evidence' rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of 'weight of the evidence' or 'clearly erroneous' action. . . . " ' (Citations omitted.) *Lawrence* v. *Kozlowski,* [171 Conn. 705, 713–14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977)]; *Persico* v. *Maher,* 191 Conn.

384, 409, 465 A.2d 308 (1983). The United States Supreme Court, in defining 'substantial evidence' in the 'directed verdict' formulation, has said that it 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' *Consolo* v. *Federal Maritime Commission,* 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966); see *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). 'The reviewing court must take into account [that there is] contradictory evidence in the record . . . but "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." ' *American Textile Manufacturers Institute, Inc.* v. *Donovan,* 452 U.S. 490, 523, 101 S. Ct. 2478, 69 L. Ed. 2d 185 (1981), quoting *Consolo* v. *Federal Maritime Commission,* supra.

"We have said that an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair. *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 697, 433 A.2d 999 (1980)." *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 541–42.

We first note that the standard of disability which the plaintiff was required to establish was not that he was permanently disabled from rendering *any* service. It was, instead that "while in state service, [he became] permanently disabled from continuing to render *the service in which he has been employed* as a result of any injury received while in the performance of his duty

as a state employee . . . . '' (Emphasis added.) General Statutes § 5-169 (b).[7]

It is clear from the two decisions of the board that, while recognizing that the plaintiff's claim of a psychiatric disability was supported by substantial evidence, the board read that same evidence as insufficient to establish that the psychiatric disability was permanent. In its first decision, the board stated: ''While recognizing the substantial evidence of a psychiatric condition as presented by the applicant, the Board finds that there is insufficient evidence to conclude that the psychiatric condition is permanently disabling. The Board takes note of a report from the applicant's psychiatrist, Doctor Michael P. O'Brien, dated May 15th, 1984, which states that applicant, '. . . have psychiatric treatment to avoid chronicity. . .' 'His treatment was prematurely terminated in March, 1981.' From the statement by the applicant's own psychiatric consultant, the Board infers that Doctor O'Brien, himself, is not satisfied as to the permanence of the disability sustained by Mr. Briggs.'' In its second decision, the board stated: ''After consideration of new evidence submitted by the applicant, as well as the applicant's testimony, the Board again finds that while there is substantial evidence of psychiatric problems currently under treatment the Board notes that the applicant's psychiatrist states that there is improvement. 'He is less depressed. His speech is more spontaneous.' 'His concentration is improved. . .' With these considerations in mind the Board fails to find sufficient new evidence of the permanence of a psychiatric condition claimed by the applicant and therefore upholds its denial of service-connected disability.''

---

[7] It is not disputed that the plaintiff was attacked and injured ''while in state service,'' or that his disability is ''as a result of [the] injury received while in the performance of his duty as a state employee.'' General Statutes § 5-169 (b).

It is also clear that the board based its findings that the plaintiff's psychiatric disability was not permanent and its conclusion of evidentiary insufficiency on the reports of O'Brien, the plaintiff's psychiatrist. As the plaintiff points out, however, the board's reading of those reports is distorted and unduly selective; it simply cannot be squared with a fair reading of the psychiatric reports in their proper context.

In his report of May 15, 1984, O'Brien noted, inter alia, that the plaintiff's "psychiatric condition continues relatively unchanged since my report of September 30, 1980 and subsequent treatment reports through March 16, 1981." He diagnosed the plaintiff as having "[p]ost-traumatic stress disorder, chronic." His report concluded: "I recommended that Mr. Briggs have psychiatric treatment to avoid chronicity in my report of September 30, 1980. His treatment was prematurely terminated in March, 1981. Mr. Briggs' condition is the result of the injuries he sustained at Norwich State Hospital on December 28, 1979. He cannot return to work there at this time and his capacity for work elsewhere is not clear. His current mental state, which prevents him from rendering the service he performed at Norwich State Hospital, has persisted and may persist for an indefinite period, absent resumption of proper treatment."[8] The plaintiff introduced into evidence

_____

[8] O'Brien's entire report dated May 15, 1984, is as follows:

"Confidential                                    Henry Briggs
Psychiatric Report                              May 15, 1984

"Mr. Briggs' psychiatric condition continues relatively unchanged since my report of September 30, 1980 and subsequent treatment reports through March 16, 1981. Essentially, he continues to have neck pain, gastrointestinal dysfunction, right arm dysfunction, back pain, decreased concentration and memory, low energy, loss of interest and estrangement. He has the early morning awakening form of insomnia and is irritable and vigilant. He reports decreased frequency of nightmares.

"He states that he has not been able to find work because of his past medical history of injury. He went to computer school but there was no

before the board the "Guides To The Evaluation Of Permanent Impairment," published by the American Med-

computer job. He feels that his doctor, wife and lawyer have understood him more in recent years than before but it is not clear to what extent he has informed other people of his problems. Apparently, he told his wife some aspects of what had happened to him and was surprised when she told him that he had not mentioned them before. He thought he had. He feels infuriatingly frustrated that he has always been an 'allright guy' but has not been treated 'fairly.'

"The mental status examination shows that Mr. Briggs is still friendly and cooperative but more irritable, hyperalert, distant and anxious. His speech is slow and quiet. His mood is depressed and his affect constricted. His thinking is tangential but there are no delusions. His thought content is despairing but he is not suicidal at this time. Serial sevens and number repetition showed impaired concentration but good effort. His thinking is abstract and his judgment intact.

"Impression: Post-traumatic stress disorder, chronic.

"I recommended that Mr. Briggs have psychiatric treatment to avoid chronicity in my report of September 30, 1980. His treatment was prematurely terminated in March, 1981. Mr. Briggs' condition is the result of the injuries he sustained at Norwich State Hospital on December 28, 1979. He cannot return to work there at this time and his capacity for work elsewhere is not clear. His current mental state, which prevents him from rendering the service he performed at Norwich State Hospital, has persisted and may persist for an indefinite period, absent resumption of proper treatment."

We note that the board based its first decision partially on O'Brien's statement that the plaintiff's treatment was prematurely terminated in March, 1981. The plaintiff claims that this termination was not of his doing, but was the result of a decision by the state to terminate payment for this treatment. He testified before the board that O'Brien "received a letter from Attorney General Girard telling him to stop seeing me. This was about the same time that they stopped paying the [workers'] compensation money. So, I stopped seeing him." He also testified that his orthopedic physician "wanted me to continue seeing Dr. O'Brien but I can't pay Dr. O'Brien. So, I had to stop. Dr. O'Brien put me on some medication and the medication has helped. I will say that. But I cannot see him, what he asks for his fees." Although there is no letter in this record from the attorney general withdrawing payment for continued treatment by Dr. O'Brien, the defendant in this court agreed "that treatment [by O'Brien] was terminated under the Workers' Compensation Program. . . . " Furthermore, in O'Brien's subsequent report, dated March 5, 1985; see footnote 9, infra; he referred to the "subsequent denial of appropriate medical care for the stress disorder" caused by the incident at Norwich Hospital. There is no suggestion, therefore, in this record that the plaintiff voluntarily terminated treatment with O'Brien prematurely.

ical Association. That document contains the following definition: "The term 'permanent' refers to a condition which results in a substantial loss of function despite treatment and which has persisted and may persist for an indefinite period." It is clear, therefore, that although O'Brien's report did not use the term "permanent," O'Brien was characterizing the plaintiff's condition at that time as permanent. In light of this, and taking O'Brien's report as a whole, we find unsupported by substantial evidence the board's inference from O'Brien's report that O'Brien was "not satisfied as to the permanence of the disability sustained by Mr. Briggs."

O'Brien's opinion as to the plaintiff's permanency became more clear in his next medical report, dated March 5, 1985. In that report, O'Brien referred to the "severe psychic trauma that Mr. Briggs experienced when he was attacked at Norwich State Hospital and the subsequent denial of appropriate medical care for the stress disorder it caused." The report noted that the plaintiff is "chronically depressed" and that "[t]he continuation of his frightening dreams, historically precipitated by the attack, and his continued psychic numbing (distance) indicate that his post-traumatic stress disorder is also chronic." O'Brien concluded: "Mr. Briggs is permanently disabled from rendering the services he performed at Norwich State Hospital, and his permanent disability is the result of injuries he sustained at Norwich State Hospital on December 28, 1979."[9]

---

[9] O'Brien's entire report, dated March 5, 1985, is as follows:

"Confidential                                             March 5, 1985
Psychiatric Report                                      Henry Briggs

"Mr. Briggs was seen today for re-evaluation. He stated that he still had not been able to find work and feels that his recent police report will make it even more difficult. He feels that he was provoked by the police in what would have otherwise been a minor traffic violation. He feels that he is preoc-

The board selected isolated phrases from O'Brien's reports which indicated some marginal improvement. Those phrases, taken out of context, do not, however, justify a reading of O'Brien's report to support a finding of a lack of permanent disability. The board's conclusion simply does not square with the evidence on which that conclusion was based.

We emphasize that this is not a case in which the plaintiff submitted ambiguous or loosely phrased medical evidence, so as to justify the board in rejecting the plaintiff's application because the evidence yielded the possibility of drawing two inconsistent conclusions or because of insufficient evidence. O'Brien's reports were clear, detailed and unambiguous. Nor is this a case which turned in any way on the credibility of witnesses.

cupied in his efforts to resolve the unemployment problems caused by his injury. He has moved. His wife has a different job.

"Mr. Briggs continues to have dry mouth, occasional orthostatic hypotension and labile hypertension but his gastointestinal symptoms have improved and he is able to eat more. He also has less early morning awakening and improved concentration since resuming the Imipramine despite his progressive despair about work. His frightening dreams are less intense. There has been no orthopedic improvement.

"His mental status examination shows that he is less irritable, hyperalert and distant since the examination of May 15, 1984. He has gained weight. He is demoralized and angry. He is less depressed. His speech is more spontaneous. He is not tangential but his ideation is paranoid. His concentration is improved and his judgment remains intact.

"Considering the history of severe psychic trauma that Mr. Briggs experienced when he was attacked at Norwich State Hospital and the subsequent denial of appropriate medical care for the stress disorder it caused, it is not surprising that he continues to show signs of stress disorder as well as depression even with therapeutic dosage of Imipramine. The medication has reduced the severity of the neurovegetative symptoms but he is chronically depressed. The continuation of his frightening dreams, historically precipitated by the attack, and his continued psychic numbing (distance) indicate that his post-traumatic stress disorder is also chronic. Mr. Briggs is permanently disabled from rendering the services he performed at Norwich State Hospital, and his permanent disability is the result of injuries he sustained at Norwich State Hospital on December 28, 1979."

The board itself twice noted the "substantial evidence" of the plaintiff's psychiatric condition. The only question was whether that condition was permanent, and the only evidence regarding that question was O'Brien's reports. Nor does either of the board's decisions disclose that it was dissatisfied with the documentary nature of the plaintiff's evidence and required live testimony from O'Brien instead. This is a case in which the board simply misconstrued the plain meaning of the documentary evidence as to the issue of the permanency of the plaintiff's disability.

We also note that a determination today that the plaintiff is permanently disabled does not preclude a different determination tomorrow if his condition changes. "Retirement income being paid for disability retirement shall end when and if the disability ends." General Statutes § 5-169 (e). The plaintiff conceded at oral argument in this court that the defendant can request that he be reevaluated from time to time in order to determine whether he is still disabled and, if he is not, to end his benefits.

We recognize that our scope of review of the defendant's actions is very limited. *Huck* v. *Inland Wetlands & Watercourses Agency,* supra. We recognize, also, that it is a rare case in which a challenge to an administrative agency's rejection of a claim for insufficient evidence will be successful, precisely because of that limited scope of review. This is that rare case. As we have said in another context, however, "[l]imited appellate review . . . must not be a mere shibboleth on the basis of which the appellate court makes such review a nullity." *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 421, 479 A.2d 826 (1984).

This conclusion leaves the question of the proper remedy on the remand. Ordinarily, in an administrative appeal, the court is warranted in issuing an order to

the administrative agency only where the totality of the evidence before the agency can be said to constitute substantial evidence as a matter of law, " 'supporting the . . . finding that only one conclusion [granting] the plaintiff's [application] could be reached, thereby compelling a modification of the administrative decision and directed order to the defendant.' " *Denby* v. *Commissioner,* 6 Conn. App. 47, 57–58, 502 A.2d 954 (1986), quoting *Persico* v. *Maher,* 191 Conn. 384, 409–410, 465 A.2d 308 (1983); see also *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 230, 497 A.2d 1005 (1985) (judgment directed where agency could reach only one conclusion as a matter of law). Our review of the record in this case leads us to conclude that this is such a case. The totality of the evidence before the board constituted substantial evidence as a matter of law that the plaintiff suffered a psychiatric disability resulting from the attack at Norwich Hospital, which rendered him permanently incapable of continuing to perform services as a mental health worker.

There is error, the judgment is set aside and the case is remanded with direction to render judgment reversing the defendant's decision and ordering the defendant to grant the plaintiff's application.

In this opinion the other judges concurred.