[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from a July 18, 1990 decision of the Canton Zoning Commission ("commission") denying the plaintiffs application for a special exception to permit the enlargement of nonconforming use. It is undisputed that the plaintiffs own and operate manufacturing facility on approximately 7.3 acres of land in Canton, Connecticut. Said land currently located in a residential AR-3 zone. Although manufacturing operations are not permitted in such residential areas, the plaintiff's business is being legally operated as a nonconforming use of the land.
On January 16, 1990 the plaintiffs applied to the commission, pursuant to Section 8-3 of the Connecticut General Statute, and Sections 10.4 and 52.6 of the Canton Zoning Regulations ("Regulations"), for a special exception to enlarge their manufacturing plant from the existing 8,188 square foot facility to one of approximately 24,401 square feet. The plaintiffs also submitted a site plan of development regarding the proposed enlargement, as required by Section 52.7.1 of the Regulations.
The court notes that although the plaintiffs stated that the reasons for expansion were to satisfy OSHA requirements, efficiency of operation and natural growth, the record reflects that they plan on doubling the number of CT Page 9243 full time employees from 25 to 50 (Exhib. iii). They have also set aside a significant area of the proposed expanded facility for "future expansion of shop. " (Exhib. OOO; Trans. 6, 17, 54).
Subsequent to giving notice according to statute, public hearings concerning the application were begun on May 16, 1990 and concluded on June 20, 1990.
On July 18, 1990 the commission voted to approve the site plan of development, conditioned upon subsequent approval of the special exception. The commission thereafter voted to deny the application for a special exception then, as a consequence, withdrew its conditional approval of the site plan.
The plaintiffs, pursuant to Section 8-8 of the General Statutes, have appealed to this court from the decision denying the special exception claiming that the commission abused its discretion in that: (1) its reasons for denying the application were vague and arbitrary; (2) the record lacks substantial evidence to support the decision of the commission; (3) the commission's interpretation of its own zoning regulations was arbitrary, unfair and unjustified; and (4) the applicable zoning regulations, as applied, are unconstitutionally vague.
A court may grant relief upon appeal from a decision of an administrative agency only when it is determined that the agency has acted illegally, or arbitrarily, or has abused its discretion. Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 573 (1988).
The court finds from the facts contained within the record, the allegations and admissions within the pleadings, and the stipulations made by the parties on the day of trial, that the plaintiffs are aggrieved for the purpose of this appeal. Specifically, the court finds that the plaintiffs were the owners of the property in question both at the time the application was filed and at the time of trial. The court further finds that the plaintiffs have a specific, personal and legal interest in the subject matter of the decision of the commission and that these rights and interests may have been injuriously affected by that decision.
This case involves an application to expand a nonconforming use of land. "A nonconformity is a use or a structure prohibited by the zoning regulations but is permitted because of its existence at the time the regulations were adopted." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 710 (1988).
As a general rule, the continuation of nonconforming uses are discouraged and an expansion of a nonconforming use is prohibited. "We recognize that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit — `[i]n no case should they be allowed to increase'" Adolphson v. Zoning Board of Appeals, Id. The Town of Canton, however) has expressly CT Page 9244 provided for the possibility of enlarging a nonconforming use.
The zoning regulations of the Town of Canton provide for two types of special exceptions. The more traditional special exception is found under Section 52.1 of the regulations and provides that "[T]he commission may approve a Special Exception in a District where such uses are listed." In order to authorize a special exception under this section the commission must find that the proposed use is listed under Section 21.2 of the regulations and that the proposal satisfies the standards contained under Sections 52.6 of the regulations. The list of permitted special exception uses found in Section 21.2 of the regulations does not include manufacturing and industry.
A second type of special exception authorized under the regulations, and that which is the basis upon which the plaintiffs filed their application with the commission in this case, is found in Section 10.4. That regulation states, "A nonconforming use of land constructure may be enlarged by Special Exception granted by the Zoning Commission provided that the proposed use and the proposed building and structure shall conform to the standards set forth in Section 52.6 of these regulations."
In addition, under both special exception regulations a site development plan must be submitted to and approved by the commission prior to approval. (Regulations — Section 52.7).
During the hearing before the trial court the commission suggested that a substantial difference exists between the special exceptions authorized under section 10.4 and those permitted under section 52.1 of the regulations. Specifically, it was pointed out that section 52.1 relates to permitted uses and 10.4 does not. The commission claims, therefore, that although it is bound by the standards found under 52.6, it should be given greater discretion in its consideration of a 10.4 application than would be the case when dealing with the traditional special exception situation under 52.1. It also argues that because 10.4 is a "different" special exception Connecticut caselaw relating to special exceptions is inapplicable. The court disagrees.
This position, advanced by the commission for the first time during the hearing on the appeal constitutes a departure from that briefed by the commission wherein it stated, "A zoning authority, in exercising its function of reviewing an application for special exception, is acting in an administrative capacity." (Quoting from Farina v. Zoning Board of Appeals, 157 Conn.). 420, 422 (1969). (Defendant's brief at 6).
It is clear that when dealing with applications for either type of special exception the Canton regulations require the commission to apply virtually the same general standards under 52.6 and 52.7. The court holds that when considering an application under either special exception the commission is acting in an administrative capacity and thus is equally limited in its discretion to approve or deny such applications. See: CT Page 9245 A.P.W. Holding Corporation v. Planning and Zoning Board, 167 Conn. 182,186 (1974); McCrann v. Town Plan and Zoning Commission, 161 Conn. 65, 77
(1971); Daughters of St. Paul Inc. v. Zoning Board of Appeals,17 Conn. App. 53, 56 (1988).
In acting on an application for a special exception the agency is required to give reasons for its actions. (Section 8-3c, Conn. Gen. Stat). The reason given by the commission for denying the special exception in this case was: "The Commission finds that Apln. 450 in [sic] not an acceptable extent of enlargement for the district to which the use is nonconforming, running contrary to the provisions of Para. 52.6.4." (Record Exhibit hhh).
The plaintiffs have argued, both in their briefs and verbally before the court, that the commission denied their application for a special exception solely upon the issue of incompatibility. The court notes, however, that the commission did not limit its reason for denying the application to any particular part of 52.6.4 of the regulations. Rather, the commission stated that the proposed expansion of the nonconforming use was contrary to the provisions (in the plural) of 52.6.4. Compatibility is only one of several such provisions found under this section of the regulations.[1]
Counsel for the commission argued for the first time during the hearing before the trial court that the record would support a determination by the commission that the proposed special exception is contrary to two provisions of Section 52.6.1 and five provisions of Section 52.6.4.
Specifically, as to 52.6.1, it is claimed that (1) the expansion would be detrimental to the character of the neighborhood and would impair the value thereof, and (2) that the use would be inconsistent with the Master Plan of Development.
As to section 52.6.4, the defendant claims the the grounds relating to (1) compatibility, (2) the existing and future character of the neighborhood (3) traffic, (4) sewerage and storm water disposal, and (5) environmental conditions support the decision of the commission.
When an agency acts on an application for a special exception., and gives reasons for its action, the only questions before the court are whether the evidence in the record reasonably supports the decision of the agency, and whether the agency addressed those matters which it was required to consider under its regulations. The court should not go beyond the collective statement of the agency. Housatonic Terminal Corporation v. Planning and Zoning Board, 168 Conn. 304, 305, 306 (1975); Holt-Lock, Inc. v. Zoning and Planning Commission, 161 Conn. 182, 190 (1971); DeMaria v. Planning and Zoning Commissioner 159 Conn. 534, 541 (1970); Spectrum of Connecticut v. Planning and Zoning Commission, 13 Conn. App. 159, 163-64, cert. denied, 207 Conn. 804 (1988). It is not the function of the court to speculate as to what additional reasons might have been cited by the commission in denying the application. CT Page 9246
Since the only collective reason given by the commission for denying the application specifically relates to Section 52.6.4, the court will not and cannot speculate whether the commission might have concluded that the proposal did not conform to any other subsection of 52.6, including 53.6.1.
The decision of the commission must be sustained by the court if the record supports any of the reasons given. Thus, the court is required to review the record as to each of the five standards contained within 52.6.4 as briefed and argued by the defendant. Central Bank for Savings v. Planning Zoning Commission. 13 Conn. App. 488, 458 (1988). Those points not briefed or argued are deemed to have been abandoned.
1. Compatibility.
In their brief, the plaintiffs indicate that they are not claiming that the Canton Zoning Regulations are per se unconstitutional. Rather, they allege that the manner in which the commission applied the compatibility standard in this case is flawed. They claim that the commission did not apply any measurable or objective criteria in using this standard as the basis for denying the application. The court agrees.
Compatibility is a nebulous term which largely eludes objective measurement or description. In the instant case, statements by members of the commission that an industrial use is simply incompatible with residential use, or that the proposed expansion is just too big, are insufficient reasons for a finding of incompatibility.[2]
It is clear that since the regulations do not specifically prohibited an expansion of a nonconforming industrial use in residential areas, such expansion is not incompatible, per se. A subjective statement by a commissioner that such use is incompatible does not make it so.
The defendant's argument that it is obvious that a 200% increase in the size of the building is too great an enlargement is not persuasive. The only applicable zoning regulation concerning building size restrictions is Section 11 which provides that the maximum lot coverage in an AR-3 District can not exceed 10%. The plaintiff's proposal falls within that parameter.
There are no quantitative standards contained within 52.6.4 for the commission to apply or an applicant to look to with respect to size as a means of determining compatibility. Whereas a 200% increase of a building of 100 square feet might be acceptable, an increase of 100% of a 10,000 square foot building might not be acceptable. Indeed, the court notes that it is likely that the commission would have approved a proposal to enlarge the plaintiff's plant by 100 square feet. (Trans. at 72). Presumably, that would have been compatible.
If an expansion of 100 square feet may be compatible but 16,000 square CT Page 9247 feet is obviously not compatible, at what size does the expansion become unacceptable on the basis of compatibility? Against what standards is the issue of compatibility to be measured?
The court finds that the commission did not apply any measurable or objective criteria in denying the application on the grounds of compatibility. The court also finds that the record does not contain sufficient evidence or objective grounds expressed or implied by the commission to justify a denial of the application on the ground of compatibility. See, Ghent v. Planning Commission, 219 Conn. 511 (1991); Sonn v. Planning Commission, 172 Conn. 159-160 (1976).
2. The existing and future character of the neighborhood.
The site in question is located in the middle of an AR-3 residential zone and is surrounded by mostly farmland. (Exhib. yyy). The plan of development in existence at the time application of the special permit was filed shows the location to be in an area designated as open space. (Exhib. zzz). A subsequent plan of development, which became effective on May 7, 1991, shows the site to be surrounded by open space and conservation trust land areas. (Exhib. aaaa).
The zoning regulations require that the commission give ". . . due consideration for the recommendations of the Plan of Development of the Town, with reasonable consideration as to the character of each district and its peculiar suitability for particular uses and with a view to . . . encourage the most appropriate use of land throughout the Town." (Regulations 1-1). A zoning commission is presumed to be aware of its own regulations, including the Town Plan of Development.
The court finds that the regulations, including the Town Plan of Development, constitute sufficient and substantial evidence in the record for the commission to have concluded that a substantial expansion of the facility, which is located in a residential and open space area of the town, would be inconsistent with the existing and future character of the neighborhood as set forth in the Plans of Development. (See footnote 2, supra). The failure to satisfy this standard within 52.6.4 is sufficient to deny the application for a special permit to expand the facility.
3. Traffic.
The court finds that the record does not support a finding that there will be a significant increase in traffic should the existing plant be expanded. There is no evidence concerning the traffic being generated by the current employees, and only speculation as to whether there would be an increase in traffic under the proposed expansion. CT Page 9248
Section 62.3 of the Canton Zoning Regulations is concerned with the sufficiency of parking spaces that must be provided for various uses. It is not a limiting regulation. For example, Section 62.3.1 does not restrict a family dwelling to one off street parking space. It requires that dwellings have one off street parking space. By like token, Section 63.3.8 requires that industrial facilities have one off street parking space for every two employees. It does not limit the parking spaces to that number.
It is possible that each of the existing twenty five employees currently drives a car to work each day. That would not be in violation of the zoning regulations. Although the number of employees is projected to increase to fifty, under the proposed expansion the number of parking spaces will be limited to twenty five. Thus, there may well be no increase in employee traffic. Any appreciable increase in non-employee traffic is mere speculation.
The defendant is correct in its assertion that the commission members may use their personal knowledge of the roads and traffic conditions in reaching their decision as to the impact of traffic upon the local roads. Burnham v. Planning Zoning Commission, 189 Conn. 261, 267
(1983); Dubiel v. Zoning Board of Appeals, 147 Conn. 517, 522 (1960). However, while members of a commission are entitled to consider whatever knowledge they acquire by personal observation, they must articulate that knowledge, and its source, upon the record. The court cannot guess or speculate as to knowledge relied by the commission, or the source of that knowledge.
The court finds that there is a insufficient evidence within the record for the commission to deny the special exception on the basis of traffic considerations.
4. Sewerage and storm water disposal.
The court finds that while there was some discussion of these factors by the commission members, there is insufficient evidence contained within the record to support the defendant's claim that concerns over the discharge of storm water and sewerage, as such, justify a denial of the application.
5. Impact on existing environmental conditions.
The court finds that the record clearly reflects significant concerns of the commission members as to past and present environmental problems associated with this site as well as the potential impact upon existing environmental conditions, to wit, wetlands, should the nonconforming use of the land be expanded as proposed. The court also finds that the record contains CT Page 9249 substantial evidence to support those concerns.
In 1986 the Department of Environmental Protection ("DEP") "found that Perry Technology Corporation located at 35 Barbourtown Road in Canton, Connecticut has created pollution to the waters of the State of Connecticut." (Exhib. a). The DEP ordered the plaintiff correct the problems and to take measures to prevent future environmental contamination (Id).
It is undisputed that the DEP order remained outstanding and had not been fully complied with at the time the application for a Special exception was submitted to the commission. (Trans. 46-48; Exhib. j). In addition, the commission was aware that although 100 cubic yards of contaminated material was removed from the site (Exhib. n; Trans. 58) 10 of 15 subsequent test holes showed detectable amounts of grease and/or oil.) Exhib. pp; Trans. 76-78).
The evidence also shows that the existing and proposed expansion of the plant is located in a "buffer area" adjacent to a wetland and is "known to be of the highest quality among wetlands in Canton and statewide." (Exhib. oo, yyy; Trans. at 3). The Canton Inlands Wetlands Commission expressed grave concern to the Zoning Commission over the proposal to expand the existing facility because of its proximity to this sensitive wetlands area. (Exhib. oo). "In making its decision (regarding a special exception) the zoning commission shall give due consideration to the report of the inland wetlands commission." Section 8-3c of the Connecticut General Statutes.
The members of the commission considered the possibility of a spill from trucks entering and leaving the facility, and the effect of such an accident upon the wetlands (Trans. at 30a). They discussed and expressed concern over the fact that the existing DEP order remained outstanding (Exhib. 46-48 and 59-61), and that the expansion and intensification of the facility might negatively impact the wetlands (Trans. 62, 65, 69, 91, 98-99).). They expressed concern over what the DEP might or might not do to correct existing and future environmental problems at the site. Finally, they event of an environmental problem, and what, if anything, the commission could do should that happen. (Trans. 77).
The court finds that the record contains substantial evidence to support the concern of the commission over the impact of both the existing facility and the proposed expansion of the facility on existing environmental conditions, namely the nearby wetlands. These concerns are sufficient grounds for the denial of the application for a special exception.
The plaintiff points out that the commission approved the site plan for the proposed expansion of the facility and then denied the special permit. They suggest that approval of the site plan, which CT Page 9250 addressed many of the issues founds under Section 52.6, should preclude the commission from denying the special permit on those same or similar grounds. The court disagrees, especially as to the grounds relating to the impact upon the environmental and the existing and future character of the neighborhood, discussed supra.
While there is some overlap in the standards to be applied in considering an application for a site plan and an application for a special permit, these are two separate regulations which server separate functions. The criteria and standards to be applied by the commission to a site plan application are more narrow than those to be applied to an application for a special exception. See, Barberino Realty Development Corp. v. Planning Zoning Commission, 25 Conn. App. 392, 396 (1991).
The court finds, for the reasons stated throughout this opinion, that the plaintiffs have not satisfied their burden of proving that the Canton Zoning Commission acted illegally, or arbitrarily, or abused its discretion in denying the application for a special exception. Accordingly, the appeal is dismissed.
Dated at Enfield this 4th day of November, 1991.
Terence A. Sullivan, Judge